UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ANDRE PARK, CELESTE VARGAS, : 
ALFREDO LARIOS SALVADOR & WILMER : 
ADOLFO LARIOS SALVADOR, : 
INDIVIDUALLY AND ON BEHALF OF ALL : 
OTHER PERSONS SIMILARLY SITUATED, :      23-CV-11309 (VEC)
        : 
        Plaintiffs, :      <u>OPINION & ORDER</u>
        : 
     -against- : 
        : 
        : 
HANPOOL, INC., GAM MEE OK, INC. & : 
HYUNG K. CHOI, : 
        : 
     Defendants. : 

------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 9/26/24_____ |

VALERIE CAPRONI, United States District Judge:

     This action was brought by Plaintiffs Andre Park, Celeste Vargas, Alfredo Larios

Salvador ("A. Salvador"), and Wilmer Adolfo Larios Salvador ("W. Salvador") against

Defendants Hanpool, Inc. ("Hanpool"), Gam Mee Ok, Inc. ("Gam Mee Ok"), and Hyung K.

Choi[1] for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.,

and New York Labor Law ("NYLL").  Plaintiffs move for conditional collective certification

pursuant to 29 U.S.C. § 216(b), *see* Mot., Dkt. 30, which Defendants oppose, *see* Defs. Opp.,

Dkt. 38.  For the reasons stated below, Plaintiffs' motion for collective certification is

GRANTED in part.

---

[1]     Hyung K. Choi is the chief executive officer and president of Hanpool, Inc., and the chief executive officer
of Gam Mee Ok, Inc.  Compl., Dkt. 1 ¶¶ 18, 30, 39–40.

## BACKGROUND

Defendants Hanpool and Gam Mee Ok operate Korean restaurants in Manhattan and New Jersey under the trade name "Gammeeok."  Compl. ¶¶ 17, 31, Dkt. 1.  Plaintiffs Park and Vargas were servers at the Manhattan location.  *Id.* ¶¶ 100, 105, 119, 124.  Plaintiffs A. Salvador and W. Salvador were bussers at the Manhattan location.[2]  *Id.* ¶¶ 141, 145, 158, 160, 163.  Plaintiffs allege that: Defendants failed to distribute lawful and accurate tip credit notices as required by the FLSA and NYLL, *id.* ¶¶ 110, 129, 149, 167; Plaintiffs were wrongfully required to share tips with the manager and with other non-tipped employees, *id.* ¶¶ 111, 113, 131, 133, 151, 153, 170; Plaintiffs were not paid on a weekly basis, *id.* ¶¶ 115, 135, 155, 172; Plaintiff Park was not paid a spread of hours premium for shifts and split shifts worked in excess of ten hours in violation of NYLL, *id.* ¶ 117; Plaintiffs Vargas, A. Salvador, and W. Salvador were employed as tipped workers but were required to spend more than 20 percent of each shift doing non-tipped work, *id.* ¶¶ 130, 150, 168.

Plaintiffs now seek to certify a collective comprised of "all non-managerial employees" "employed by Defendants from December 29, 2020, to the present."  Pl. Mem. at 6, Dkt. 31.  Additionally, Plaintiffs seek an order requiring Defendants to provide a comprehensive list of contact information for all non-managerial employees employed by Defendants from December 29, 2020, to the present; approving the proposed Reminder Notice and Consent to Join forms; authorizing the distribution of these forms through multiple communication channels including U.S. Mail, email, text message, KakaoTalk, and WhatsApp; issuing reminder notices 45 days after the initial notice; authorizing a 90-day notice period for potential Collective Action

---

[2]    The Complaint alleges that A. Salvador was hired on or about September 10, 2023, *id.* ¶ 143, and his employment was terminated November 6, 2023, *id.* ¶ 145; the Complaint also alleges that he was paid $15 per hour from December 2022 to August 2023, *id.* ¶ 146, and $13 per hour from September 2023 to November 16, 2023, *id.* ¶ 147.  Accordingly, the dates of his actual employment are unclear.

Members to respond; allowing responses through the same communication channels; and equitably tolling the statute of limitations until the commencement of the 90-day opt-in period. *Id.*

**DISCUSSION**[3]

## I.    Legal Standard

The FLSA permits employees to maintain an action for and on "behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  There is a two-step process to determine whether to certify a collective action.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010).

At the notice stage, a plaintiff must establish that other employees "may be similarly situated" to him.  *Id.* at 555 (citation omitted).  To meet this burden, the plaintiff need only "make a modest factual showing that [he] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  *Id.* (citation omitted).  "[I]f named parties and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment."  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020) (cleaned up).

Although that burden is modest, "it is not non-existent," *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (internal quotation marks and citation omitted), and it generally cannot be satisfied by "unsupported assertions," *Myers*, 624 F.3d at 555 (internal quotation marks and citation omitted).  Nonetheless, courts employ a "low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist."  *Id.* (citation omitted).  Courts do not

---

[3]    Citations to alphabetical exhibits (*e.g.*, Ex. A) refer to the exhibits attached to the Declarations of Clifford Ryan Tucker, Dkt. 32.

examine at this point "whether there has been an actual violation of law." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Krueger v. N.Y. Tel. Co.*, No. 93-CV-0178, 93-CV-0179, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)).

At the second stage, when the court has a more developed record, the named plaintiffs must prove that "the plaintiffs who have opted in are *in fact* 'similarly situated'" to the named plaintiffs and that they were all subject to a common illegal wage practice. *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3964, 2014 WL 5314822, at *2 (S.D.N.Y. Oct. 16, 2014) (quoting *Myers*, 624 F.3d at 555). The action may be "'de-certified' if the record reveals that [the opt-in plaintiffs] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555 (citation omitted).

## II.    Plaintiffs' Motion for Conditional Certification is Granted in Part

According to Plaintiffs, they meet the modest factual showing for a collective action to be certified. Plaintiffs state that Defendants misappropriated tips and violated overtime requirements, and that all non-managerial employees at both of Defendants' restaurants were subjected to the same unlawful policies. Pl. Mem. at 7–9. Defendants oppose Plaintiffs' motion arguing that: (1) Plaintiffs have failed to establish that Hanpool and Gam Mee Ok are a "single employer" or an "integrated enterprise," and (2) Plaintiffs have improperly asserted that NYLL protections apply to New Jersey employees.[4] Defs. Opp. at 6–9.

For the following reasons, Plaintiffs' motion is GRANTED only as to "non-managerial employees" who worked at Gammeeok's Manhattan location; Plaintiffs' motion is DENIED as to all "non-managerial employees" who worked at Gammeeok's New Jersey location.

---

[4]    The Court need not address Defendants' argument that Plaintiffs are improperly asserting that NYLL protections apply to New Jersey employees. Defs. Opp. at 8–9. A motion to conditionally certify a collective action requires only that plaintiff(s) show that she is a "similarly situated employee" with regards to the alleged federal violations. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).

A. **Plaintiffs Fail to Establish that Defendants Operate as a Single Integrated Enterprise**

Plaintiffs assert a "single employer" theory of employer liability by arguing that Defendants own and operate an enterprise consisting of two restaurants under the same trade name. Pl. Mem. at 9. In order to show that a "group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes," Plaintiffs must show that the entities are a "single integrated enterprise." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (collecting cases). "Under this standard, courts consider the (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.*

Plaintiffs assert that the two Gammeeok restaurants are commonly owned and managed, because Defendant Choi is the chief executive officer and president of both. Compl. ¶¶ 18–19, 30, 39, 57. For proof, Plaintiffs allege that Choi received one or more architectural and interior design service proposals at the New Jersey location for renovations at the Manhattan location. *Id.* ¶ 48. Plaintiffs also allege that Hyung Mo worked as a manager at both locations. *Id.* ¶ 81. The restaurants are marketed jointly using the same account on Instagram under the name "gammeeok_ny_nj." *Id.* ¶ 99.

Plaintiffs have not sufficiently carried their burden to establish that Defendants' restaurants operate as a single integrated enterprise. Although Defendant Choi has an ownership interest in both restaurants and the liquor licenses for each are in his name, the two restaurants operate under separate corporate entities, have separate bank accounts, file separate tax returns, employ different accountants, and use supplies separately. Decl. of Hyung K. Choi ¶¶ 16–19, 22, Dkt. 40. *See Guaman v. 5 M Corp.*, No. 13-CV-03820, 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013) ("Plaintiff's evidence of common ownership is not evidence that the same

unlawful employment policy was in place at each of the four restaurants.").  Choi also swears that the restaurants do not have uniform policies, including human resources policies; instead, the managers of each restaurant are responsible for devising and implementing rules regarding hiring, firing, and pay schedules.  Decl. of Hyung K. Choi ¶¶ 8–9.  Plaintiffs assert that Mo served as a manager of both restaurants.  Pl. Mem. at 10.  Choi explained, however, that after the previous manager of the Manhattan location left unexpectedly, Mo filled in as the manager of the Manhattan location for three months.  Decl. of Hyung K. Choi ¶ 15.  Aside from Mo, no other employees from either location worked at the other restaurant, including the Plaintiffs.  *Id*. ¶ 24. Choi disputes Plaintiffs' allegation that he used the same architectural and interior designer for both locations.  *Id*. ¶ 25.

Plaintiffs do not offer any declaration from an employee who works in the New Jersey location, nor do any of the declarations from Plaintiffs refer to any employees who work in the New Jersey location or the terms of their employment.  In short, the Court has no facts available from which it can infer that the employment policies at the Manhattan Gammeeok were also the employment policies of the New Jersey Gammeeok.  Accordingly, Plaintiffs have not made the required showing to support their assertion that Defendants operate a "single integrated enterprise."

## B. Plaintiffs Have Established that Members in the Proposed Collective Who Worked in Manhattan Are Similarly Situated to Them

Plaintiffs seek to certify a collective of "all non-managerial" employees who were employed by Defendants.  Pl. Mem. at 16.  Because courts do not examine "whether there has been an actual violation of law" at the notice stage, the Court need not delve into whether Plaintiffs have stated a claim under federal law.  *Sarr v. Singergia, Inc.*, No. 22-CV-3610, 2022 WL 4952972, at *2 (S.D.N.Y. Oct. 4, 2022) (citation omitted).  Instead, the proper inquiry is

whether Plaintiffs have demonstrated that they are similarly situated vis-à-vis their FLSA claims to the putative collective members. The Court finds that they have carried this burden with respect to other non-managerial employees, albeit barely as to non-tipped, back-of-the-house employees.

Plaintiffs' motion for collective certification states that the members of the proposed collective are similarly situated to them but does little to support that assertion as to individuals in job categories other than servers and bussers. Plaintiffs' form-template declarations state that they "noticed that employees, including the named Plaintiffs, did not receive adequate tip credit notices and were obligated to share their tips with non-tipped workers," and that "[c]oworkers who encountered these issues include but are not limited to [the named Plaintiffs]." Decl. of Tucker, Ex. B ¶¶ 12–13. Each of the declarations states that the Plaintiff "witnessed and [participated in conversations] with coworkers who experienced similar wage and hour violations." Decl. of Tucker, Ex. B ¶ 13, Ex. C ¶ 14, Ex. D ¶ 12, Ex. E ¶ 12. Plaintiffs also submitted a copy of the tip pool records from the Manhattan location. Decl. of Tucker, Ex. F. Aside from two pages that include typed spreadsheets reflecting payroll records for servers, the rest of the records are handwritten records that include only the first names of employees, without stating their positions within the restaurant. *Id.* Plaintiffs are not required to provide details about every single non-managerial employee, but Plaintiffs are expected to provide "a modest factual showing" in support of their assertion that members of the proposed collective suffered FLSA violations similar to the ones they alleged they suffered. *Myers*, 624 F.3d at 555 (cleaned up). The only declaration that provides slightly more information is the declaration of Plaintiff Vargas, who states that she "witnessed conversations with staff in 'front of house' and 'back of house' (e.g., cooks and dishwashers) positions that their checks did not include payment

for all hours worked.  Additionally, back of house workers such as Fernando (a chef) Oscar (a dishwasher) and Felix (a line cook) said that their paychecks did not reflect proper payments for all the hours that they had worked."  Decl. of Tucker, Ex. C. ¶ 14.  These statements are barely enough for Plaintiffs to carry their low burden of demonstrating that they and other servers, bussers, and non-tipped, back-of-the-house staff were victims of the same unlawful wage policy.  *See Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, No. 12-CV-1054, 2013 WL 2284882, at *1 (S.D.N.Y. May 23, 2013) (conditionally certifying a collective based on plaintiff's observations that members of the proposed collective were not properly paid).

      Courts have routinely certified conditional collective actions based on the plaintiff's affidavit declaring that "they have personal knowledge that other coworkers were subjected to similar employer practices."  *Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14-CV-813, 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014); *see also Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases).  Plaintiffs' affidavits contain "a minimum level of detail" regarding their conversations.  *Reyes v. Nidaja, LLC*, No. 14-CV-9812, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015).  Plaintiff Vargas names four other non-managerial employees with whom she spoke about their pay.  Decl. of Tucker, Ex. C ¶ 14.  Although her allegations are cursory, conversations are sufficient to satisfy the modest requirement of proof required at the notice stage.  *See Chang Yan Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654, 2021 WL 135248, at *4 (S.D.N.Y. Jan. 14, 2021).

### C.  The Proposed Notice Must be Modified

      The form of notice and its details are left to "the broad discretion of this Court."  *Ramos v. Platt*, No. 13-CV-8957, 2014 WL 3639194, at *5 (S.D.N.Y. July 23, 2014) (citing *Hoffmann-*

*La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). The Court finds that several revisions must be made to Plaintiffs' proposed notice.

Plaintiffs seek to send notice to "all current and former non-managerial employees who have worked at Gammeeok Restaurants between December 29, 2020, and the present." Decl. of Tucker, Ex. G at 1. FLSA claims have a statute of limitations period of two years, which is extended to three years in the case of a willful violation. *See* 29 U.S.C. § 255(a). Because the FLSA provides the basis for the collective certification, the Proposed Notice may only reach individuals who were employed at Defendants' Manhattan restaurant at some point during the three years prior to the commencement of this action. Thus, the Proposed Notice must be provided only to employees who worked at the Manhattan location of Gammeeok at any point on or after December 29, 2020 (three years prior to the filing of the Complaint, *see* Compl.).

Plaintiffs request that the Court equitably toll the FLSA's statute of limitations for potential members of the collective until Plaintiffs send notice to potential opt-in collective members.[5] Pl. Mem. at 20. Defendants have not objected. The limitations period for an FLSA collective action "continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit." *Pierre v. City of New York*, No. 20-CV-5116, 2022 WL 4482295, at *9 (S.D.N.Y. Sept. 27, 2022) (citation omitted). Equitable tolling is only appropriate "in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347, 2022 WL 193004, at *8 (S.D.N.Y. Jan. 21, 2022) (citation omitted). "The delay caused by the

---

[5]    The heading in Plaintiffs' brief states: "The Court Should Equitably Toll the Statute of Limitations While the Conditional Certification Motion is Pending." Pl. Mem. at 20. Plaintiffs then requested, however, that the Court toll the statute of limitations until Plaintiffs send the actual notice to potential collective members. *Id.* The date by which the Court decides the motion for conditional certification and the date by which Plaintiffs send notice will be two different dates; the Court assumes Plaintiffs seek to toll the statute of limitations until they send the notice, as that is the longer period of the two.

time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine." *Mota v. Intern Connection Elec., Inc.*, No. 21-CV-7530, 2021 WL 3188336, at *2 (S.D.N.Y. July 28, 2021).

"To determine whether to apply the principle of equitable tolling, the district court must consider whether the plaintiff (1) 'has proved that the circumstances are so extraordinary that the doctrine should apply' and (2) 'has acted with reasonable diligence during the time period she seeks to have tolled.'" *Kassman v. KPMG LLP*, No. 11-CV-3743, 2015 WL 5178400, at *4 (S.D.N.Y. Sept. 4, 2015) (quoting *Zerilli–Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003)).

Plaintiffs moved for conditional certification shortly after court-ordered mediation was unsuccessful. The motion has been fully briefed for roughly two months. To avoid prejudice to actual or potential opt-in plaintiffs and in light of there being no objection from Defendants, Plaintiffs' request for equitable tolling is GRANTED. The FLSA statute of limitations is tolled from June 14, 2024, the date on which Plaintiffs filed their motion for conditional certification, to the date of this Order. Tolling of the limitations period is not extended throughout the notice period for opt-in plaintiffs, however, because Plaintiffs have not demonstrated that extraordinary circumstances warrant tolling during that time. *See Zhongle Chen v. Kicho Corp.*, No. 18-CV-7413, 2020 WL 1900582, at *13 (S.D.N.Y. Apr. 17, 2020) (declining to apply equitable tolling during a notice period and explaining that opt-in plaintiff delay is not an extraordinary concern, "rather, it is a common issue present in litigation").

Plaintiffs have requested a 90-day opt-in period. Decl. of Tucker, Ex. G at 3. "Courts in this Circuit routinely restrict the opt-in period to 60 days." *Sharma v. Burberry Ltd.*, 52 F. Supp.

3d 443, 465 (E.D.N.Y. 2014) (citations omitted); *see also Escano v. N&A Produce & Grocery Corp.*, No. 14-CV-4239, 2015 WL 1069384, at *3 (S.D.N.Y. Mar. 11, 2015) (ordering a sixty-day opt-in period when the plaintiff "[did] not explain why a 90-day period is necessary"). Plaintiffs have not explained why a longer-than-usual opt-in period is necessary, aside from "allow[ing] the greatest number of Plaintiffs to opt into the action." Pl. Mem. at 24. "While some courts have granted up to 90-day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011). Accordingly, the Court limits the opt-in period to 60 days.

Defendants request that the Court give them twenty days from the date of the order to produce the list of employees; that Defendants not be required to provide the full social security numbers of employees, and that a certificate of accuracy to the Spanish translation of the proposed notice and consent form be attached.[6]  Defs. Mem.at 9–10.  Plaintiffs request that Defendants produce an Excel data file with the requested information.  Pl. Mem. at 22. Defendants have not opposed that request.  The information may be provided by Defendants in Microsoft Excel, or in any other reasonably useable form.

Defendants are not required to produce the social security numbers of potential collective members.  *See King v. Fedcap Rehab. Servs.*, No. 20-CV-1784, 2022 WL 292914, at *12 (S.D.N.Y. Feb. 1, 2022) (denying plaintiff's request for production of social security numbers); *Tueros v. Urb. Health Plan, Inc.*, No. 21-CV-4525, 2022 WL 2752070, at *16 (S.D.N.Y. July 14, 2022) (same).

---

[6]    Plaintiffs do not object to a 20-day calendar period for Defendants to produce the list of employees; nor do Plaintiffs object to providing a certification regarding the Spanish translation of the notice.  Pl. Reply at 8, Dkt. 41.

Plaintiffs request that Defendants be required to post the notice and consent form at conspicuous locations in their restaurants.  Pl. Mem. at 24.  Because Defendants have not objected to posting the notice and consent form, they are ordered to do so in the Manhattan location of Gammeeok.  *See Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17-CV-4661, 2019 WL 3759126, at *13 (S.D.N.Y. July 25, 2019) ("Defendants shall post a copy of the notice, in all relevant languages, at [the] restaurant location, in a conspicuous and unobstructed location or locations likely to be seen by all currently employed members of the collective, and the notice shall remain so posted throughout the opt-in period.").

Plaintiffs also request authorization to distribute the notice and consent forms through multiple channels including U.S. mail, email, text message, KakaoTalk, and WhatsApp.  Pl Mem. at 6.  The Court approves sending the notice by mail, email, text messages, KakaoTalk, and WhatsApp, which have become standard methods of distribution in this Circuit.  *See Ramirez v. Liberty One Grp. LLC*, No. 22-CV-5892, 2023 WL 4541129, at *12 (S.D.N.Y. July 14, 2023) (citation omitted).

Plaintiffs seek approval to send a reminder notice and consent form 45 days after the initial notice.  Pl Mem. at 6; Decl. of Tucker, Exs. I, J.  Courts in this district have authorized plaintiffs to send reminder notices, as FLSA notices are "[i]ntended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in."  *Chen v. Thai Greenleaf Rest. Corp.*, No. 21-CV-1382, 2024 WL 3742718, at *10 (E.D.N.Y. Aug. 9, 2024) (citation omitted).  *See also Diaz v. N.Y. Paving Inc.*, 340 F. Supp. 3d 372, 387 (S.D.N.Y. 2018).  Thus, sending a reminder notice halfway through the notice period (at the thirty-day mark) is appropriate, and Plaintiffs' request is granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for collective certification is GRANTED in part.  The Court conditionally certifies a collective of non-managerial employees who worked at the Manhattan location of Gammeeok at any time on or after December 29, 2020.  Defendants are ordered to provide to Plaintiffs' counsel contact information (including names, addresses, email addresses, and telephone numbers) for all potential members of the collective within 20 days of the date of this order.

The proposed notice must be modified consistent with this Order, and the Court has provided the parties with other editorial changes to the notice and consent form for their consideration.  The parties must confer on any remaining objections to the form or means of distribution of the notice.

The Clerk of Court is respectfully directed to terminate the open motion at docket entry 30.

**SO ORDERED.**

**Date:  September 26, 2024**
      **New York, New York**

                                   **VALERIE CAPRONI**
                              **United States District Judge**