# SACCO & FILLAS LLP

31-19 Newtown Ave., 7ᵗʰ Floor                                     Phone: 718-269-2243
Astoria, New York 11102                                            CTucker@SaccoFillas.com

May 1, 2025

**VIA ECF**
Hon. Sarah L. Cave
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

|  |  |  |
|---|---|---|
| Re: | Letter motion for settlement approval |
| Case: | *Park et al v. Hanpool, Inc. et al* |
| CASE #: | 1:23-cv-11309-SLC |

Your Honor,

This office represents named Plaintiffs Celeste Vargas, Alfredo Larios Salvador, Wilmer Adolfo Larios Salvador, Andre Park and opt-in plaintiffs Juan Pablo Angamarca Espinoza, Daniel Ajcojon, and Frederick Veras. We respectfully submit the instant request that the Court preliminarily approve the settlement between Plaintiffs and Defendants which was reached at a conference before your Honor on March 6, 2025.

## 1. Exhibits

- Ex A – Settlement Agreement, Proposed Stipulation of Dismissal, Confessions of Judgment, and Claim Forms
- Ex. B – Damages Calculation
- Ex. C – Attorney's bill for fees and costs

## 2. Procedural History

On December 29, 2023, Plaintiffs Andre Park, Celeste Vargas, Alfredo Larios Salvador, and Wilmer Adolfo Larios Salvador filed the instant action against Defendants to remedy Defendants' violations of the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), New York Labor Law (NYLL) Article 6 § 190 et seq., New York State Department of Labor wage orders and regulations and failure of Defendants to pay minimum wages, comply with notice and record-keeping requirements, tip theft, and failure to timely pay weekly wages pursuant to NYLL § 191.

On or about April 5, 2024, the parties attended mediation however, the matter did not settle. The Plaintiffs voluntarily dismissed claims without prejudice against Defendants Junsik Moon (a/k/a Derek Doe), Hong Jun An (a/k/a Jun Doe) and Hyung Mo. On September 26, 2024, the district Court approved conditional certification of this action. ECF No. 49. The parties engaged in discovery. ECF No. 52. Plaintiffs Daniel Ajcojon, Frederick E. Espejo Veras, and Juan Pablo Angamarca Espinoza opted into the action. ECF No. 57 – 59. Each opt-in consent form states, inter alia, "if I am not a named Plaintiff, I authorize the named Plaintiff(s) to make all decisions on my behalf regarding the case, including settlement." *Id.* On or about March 6, 2025, all named and opt-in Plaintiffs except

Daniel Ajcojon and Juan Pablo Angamarca Espinoza attended a settlement conference before this court. The parties reached a settlement in principle before Hon. Sarah L. Cave as set forth in the attached settlement agreement. Exhibit A.

3.  **Factual Allegations**

This is a wage and hour action. Plaintiffs allege that they worked as follows:

- Celeste Vargas – server from August 7, 2023 to November 8, 2023
- Alfredo Larios Salvador – busser from September 10, 2022 to November 6, 2023
- Wilmer Adolfo Larios Salvador - busser from December 2022 to November 6, 2023
- Andre Park – server from June 20, 2023 to November 5, 2023
- Juan Pablo Angamarca Espinoza (opt-in) – dishwasher from October 21, 2024.- November 27, 2024
- Daniel Ajcojon (opt-in) – cook from March 12, 2021 to October 19, 2024
- Frederick Veras (opt-in) – server from January 14, 2019 to January 1, 2023

Plaintiffs Andre Park, Celeste Vargas, Alfredo Larios Salvador, Wilmer Adolfo Larios Salvador Frederick Veras, were paid below minimum wage at various times, and were not provided with lawful and accurate tip credit notices as required under the FLSA and NYLL. They were required to share tips with manager Defendant Hong Jun An (a/k/a Derek) and other non-tipped workers. Additionally, they were required to perform non-tipped work (kitchen assistance, security, dishwashing, food preparation etc.,) for more than twenty percent (20%) or two hours of each shift.

To the extent the foregoing Plaintiffs worked overtime, Defendants miscalculated overtime rates by multiplying reduced hourly rates by 1.5. According to regulations, Defendants should have calculated the overtime rate by multiplying the full minimum wage hourly rate by 1.5 then reducing that amount by the tip credit, not the other way around. The losses are documented in the attached damages calculation.

All Plaintiffs were manual workers and thus entitled to weekly pay under NYLL 191. Despite this obligation, several Plaintiffs were paid bi-weekly and thus Plaintiffs are entitled to liquidated damages for the late payment of wages.

Defendants failed to furnish Plaintiffs with wage notices upon hire or whenever the pay rate changed or as otherwise required by NYLL 195(1). Defendants failed to furnish Plaintiffs with wage statements as required under NYLL 195(3). Consequently, Defendants are liable for up to $10,000 of statutory damages to each Plaintiff.

Defendants denied the allegations, challenged Plaintiffs' standing to bring claims under NYLL 195, and contended that they had limited ability to pay a more significant judgment in this action.

4.  **Settlement Agreement**

The Settlement Agreement, attached hereto as Exhibit A, requires Defendants to pay One Hundred and Fifty-Five Thousand Dollars and Zero Cents ($155,000.00) payable in fifteen (15) installments set forth in the Settlement Agreement. Ex. A. Of the gross sum, Plaintiffs will receive

$101,387.10. Plaintiff's counsel's fee constitutes one third (1/3) of the gross settlement in the amount of Fifty-One Thousand Six Hundred Sixty-Six Dollars and Sixty-Six Cents ($51,666.66). Counsel will also be reimbursed for the costs of litigating this action in the amount of One Thousand Nine Hundred and Forty-Six Dollars and Twenty-Three Cents ($1,946.23). Thus, in total, counsel will receive Fifty-Three Thousand Six Hundred and Twelve Dollars and Eighty-Nine Cents ($53,612.89) representing fees and costs in this action.

In the event of default, Defendants are jointly and severally liable for the full Settlement Sum which shall become immediately due plus an amount in liquidated damages which were waived in settlement. Ex. A.

The Agreement in this case contains a release by Plaintiffs of wage-related claims under the FLSA, the NYLL and WTPA. See Exhibit A.

**5.** **The Court Should Preliminarily Approve the Settlement Agreement and Authorize Notice to Opt-In Plaintiffs who did not Execute the Agreement.**

The Court should preliminarily approve the Settlement Agreement and authorize Plaintiffs' counsel to distribute a Claim Form for opt-in Plaintiffs who did not execute the Settlement Agreement to join the settlement.[1]

Here, the named Plaintiffs settled claims for all Plaintiffs because the action was *conditionally* certified, not finally certified as a collective. *See generally, Marin v. Apple-Metro, Inc.*, No. 12 CV 5274 (CLP), 2024 WL 4363629, at *6 (E.D.N.Y. Mar. 29, 2024) (discussing settlement procedure for case which was conditionally but not finally certified). Where not all opt-in plaintiffs execute the Settlement, "courts approve different procedural mechanisms to facilitate opt-in plaintiffs' consent to a settlement." *Marichal v. Attending Home Care Servs., LLC,* 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020). "One common approach is use of a two-tiered procedure: first, the parties file a motion for preliminary approval of the settlement and request approval of a notice." *Id.* As is relevant here, "after preliminary approval is granted, notice is sent to extant collective members, giving them the opportunity to opt into the settlement." *Id.* "As a second step, the parties file a motion for final approval, and the Court conducts a final fairness hearing, giving all opt-in plaintiffs the opportunity to be heard by the Court." *Id.* The Court should not require a second motion because it will have already approved the settlement as outlined in this application. Since the matter is only conditionally certified, the two opt-in Plaintiffs can indicate their agreement to the settlement by submitting their Claim Forms. Accordingly, the Court should follow the two-step procedure and approve the Settlement Agreement currently before it.

---

[1] Plaintiffs' counsel made diligent efforts to contact the opt-in Plaintiffs before settlement negotiations. On January 28 and February 6, 2025, counsel notified all Plaintiffs, including Daniel Ajcojon and Juan Pablo Angamarca Espinoza, of the March 6, 2025 settlement conference and provided the Microsoft Teams link. On February 28, 2025, counsel texted Ajcojon to confirm his phone number and Espinoza to confirm attendance. On March 3, 2025, counsel engaged Lexitas to locate Ajcojon, whose phone number was nonfunctional. Ajcojon and Espinoza did not attend the March 6 conference, though all other parties did and reached a settlement. Ajcojon and Espinoza had previously signed consent forms authorizing the named Plaintiffs to settle the case.

On March 13, 2025, counsel's staff attempted to call both Plaintiffs again but found Ajcojon's number disconnected and Espinoza's incorrect. On March 20, letters were mailed requesting they contact the office. On April 23, 2025, further calls to all available numbers reached no one, and messages could not be left. Counsel is committed to continuing to reach these Plaintiffs.

Unlike a finally approved collective, in this conditionally certified collective; therefore, the Court should permit counsel to send notice to the two opt-in Plaintiffs to join the settlement. That approach is consistent with the opt-in procedure for collective actions under the FLSA. "For the Opt-In Plaintiffs to be bound by the Agreement, they must be given notice and the opportunity to opt-in affirmatively and consent to the Agreement." *Marichal*, 432 F. Supp. 3d at 281 (E.D.N.Y. 2020). "Unlike a Rule 23 class action, which typically binds all members of the class unless they have expressly opted out of the class action, in a collective action under the FLSA, a class member must opt in to be bound." *Brack v. MTA New York City Transit*, No. 18-CV-846-SJB, 2019 WL 1547258, at *5 (E.D.N.Y. Apr. 9, 2019).

In this case, after the Court's approval, Plaintiffs' counsel would distribute a Claim Form (Ex. D) by mail, email, and mobile / text message in English and their primary language to the opt-in Plaintiffs, who did not execute the Settlement Agreement. There will be a sixty (60) day period for those Plaintiffs to submit timely claims. To be valid, the Claim Form must be completed and provide the information as instructed, signed, dated, and sent to Sacco & Fillas LLP within the Claim Period. Claims Forms which are not returned within the Claim Period are null and void unless otherwise agreed to in writing by the Parties or approved by the Court. If the Claim Form is returned and not completed as required, then Sacco & Fillas LLP, within five (5) business days of receipt, shall send notice of the defects and include a new Claim Form and take reasonable steps to obtain a compliant Claim Form. Those Plaintiff(s) shall then have the remainder of the sixty (60) days in the Claim Period or twenty (20) days from the re-notification, whichever is longer, to return the new Claim Form and provide the missing information. If a Valid Claim Form is not received within that period, the Claim Form shall be null and void unless otherwise agreed to in writing by the Parties or approved by the Court.

Plaintiffs who execute the Settlement Agreement will not be required to submit a Claim Form to receive payment because they have given their consent to settlement by signing the Agreement.

The portions of the Settlement proceeds specifically allocated to individual Plaintiffs who do not timely join the Settlement or submit a Claim Form shall revert to Defendant, and the FLSA and NYLL claims of those individuals shall not be deemed released under this Settlement Agreement. All other provisions of the Agreement shall remain in full force and effect.

## 6. The Court Should Approve the Settlement of Plaintiffs' Claims as Fair and Reasonable and Dismiss the Action with Prejudice

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. *Id.* "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (*quoting Garcia v. Bae Cleaners Inc.*, No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

"(1) the Plaintiffs' range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

As set forth more fully below, the Parties respectfully submit that this settlement is fair, reasonable, and the product of arm's length negotiations in mediation and before the magistrate. For these reasons and those set forth in further detail below, the settlement should be approved. Therefore, the parties respectfully request that this Court finds that the settlement amount is fair and reasonable.

### 6.1.  Range of Possible Recovery

Plaintiffs' Counsel calculates the highest possible damages for Plaintiffs as approximately $36,934.69 in unpaid wages, $162,053.79 in liquidated damages for late payment violations, $31,500.00 in wage notice violations, $35,000.00 in wage statement violations, and $37,998.53 in withheld tips. With liquidated damages, the highest possible recovery for Plaintiffs could reach approximately $340,421.71, excluding fees and costs.[2]

However, it is important to note that this upper limit does not necessarily accurately reflect the realistic prospects of collecting that amount. The parties have not engaged in depositions or motion practice, or trial, which introduce litigation risk. Additionally, Defendants are not insured to cover a wage and hour judgment in this matter and therefore may default.

Given these considerations, the settlement amount of $155,000.00 is fair and reasonable. This amount provides Plaintiffs with $101,387.10 after payment of attorney's fees and costs. In other words, Plaintiffs will recover $135% of the wages and tips they are owed after fully compensating their attorneys for their efforts and expenses.

### 6.2.  Bona Fide Disputes and Other Issues that Support Accepting the Settlement Agreement

Defendants disputed Plaintiffs' claims of unpaid wages and tips. Defendants also argued that claims for wage notices and statements will be dismissed under Article III. Defendants contend Plaintiffs were paid all wages and tips and denied all claims. If litigation were to proceed, a Court or jury might credit Defendants' testimony and thereby reduce Plaintiffs' damages.

Another important factor in settlement negotiations was the avoidance of litigation burdens and expenses. If this case were to proceed, it would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all Parties and could lead to the depletion of the resources used to resolve this matter.

---

[2] Excluding interest, attorneys' fees and costs.

In settlement, Plaintiffs will receive more than their lost wages and fully compensate counsel for effort and expenses in obtaining this successful resolution, without the need for trial.

Given the attendant risks of litigation, the successful resolution, and the fact that the Court oversaw the settlement conference, the settlement represents a fair and reasonable resolution of this action.

### 6.3. <u>Description of Settlement Negotiations</u>

The parties engaged counsel who were experienced in wage and hour litigation. Counsel engaged in court-ordered mediation and then a settlement conference before the Court.

Settlement of this matter required significant expenditure of time and effort, including unsuccessful mediation, exchange of document discovery, a collective action conditional certification motion, and a settlement conference with the magistrate. Ultimately, the parties reached a favorable settlement.

The extensive negotiations performed in this matter confirm that there was no collusion or fraud and that the Settlement Amount is the product of fair and reasonable negotiations.

We respectfully request that the Court retain jurisdiction to enforce the settlement, as set forth in the stipulation of dismissal attached to the Settlement Agreement. Ex. D.

### 6.4. <u>Amount of Plaintiffs' Attorney's Fees and the Basis for the Claimed Amount</u>

In accordance with the retainer agreement with Plaintiffs, Plaintiffs' counsel requests 1/3 of the total settlement amount before reimbursements of costs, which amounts to $51,666.66 in fees. As for costs, the costs of this action are itemized in the Attorney Bill, attached hereto, amounting to $1,946.23 for the entirety of the case. Ex. C. These costs and the fee amount to $53,612.89, an amount that is presumptively fair. *See Matter of Lawrence*, 24 N.Y.3d 320, 339 (2d Cir. 2014) ("absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 NGG VMS, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"); *Karic v. Major Automotive Companies, Inc.*, 2016 WL 1745037 at *8 (E.D.N.Y. April 27, 2016)("Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund.")

Furthermore, as the proposed attorneys' fees are "consistent with a commonly approved percentage … the attorney's fee award is based on an agreement between Plaintiffs[s] and counsel," the fee should be approved as reasonable. *Alonso v. LE Bilboquet NY, LLC,* No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017). The percentage method provides a powerful incentive to attorneys for Plaintiffs in contingency fee FLSA cases to obtain the highest possible settlement amount for their clients and to avoid unnecessary litigation in an effort to build up a lodestar. *See McDaniel v. City of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010) ("lodestar method is not perfect. It creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also can create a disincentive to early settlement.").

If the lodestar method were to be used based on the billing shown in Exhibit C, courts generally "apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved." *Puciarelli v. Lakeview Cars, Inc.,* 2017 WL 2778029 at *2 (E.D.N.Y June 26, 2017.) The most common multiplier used by courts in this circuit is doubling the lodestar, which they have found to be reasonable for FLSA settlements. *See e.g. Hall v. Prosource Techs.,* 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016). By accepting 1/3 of the Settlement Sum and reimbursement of costs, Plaintiffs' counsel has effectively agreed to reduced hourly rates that would otherwise be fair and reasonable in a case of this nature. Our firm has worked on this matter without compensation of any kind to date and our fee has been wholly contingent upon the result achieved.

**6.5.** <u>**Reasonableness of Fee Amounts**</u>

Here, Plaintiffs' Counsel's fee request is reasonable in light of the success in settling this matter. The time expended was necessary to obtain the results achieved. "The hourly rates used in making a fee aware should be 'what a reasonable, paying client would be willing to pay.'" *Mills v. Cap. One, N.A.,* No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *11 (S.D.N.Y. Sept. 30, 2015). "In determining a reasonable hourly rate, the court should not only consider the rates approved by other cases in the District but should also consider any evidence offered by the parties." *Farbotko v. Clinton Cty.,* 433 F.3d 204, 208-09 (2d. Cir. 2005). Unlike many other members of the FLSA Plaintiffs' Bar, Plaintiffs' Counsel regularly represents both employers and employees in wage and hour litigations. The firm's defense clients actually pay for the firm's legal services at each attorney's full hourly rate. *Lora v. J.V. Car Wash, Ltd.,* No. 11CIV9010LLSAJP, 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) ("ADK's requested rates are the amounts that [both attorneys] actually charge to their hourly-paying clients in other employment matters.").

**6.6.** <u>**Plaintiffs' Counsel's Qualifications**</u>

"To determine the quality of representation, courts review, among other things, the recovery obtained, and the backgrounds of the lawyers involved in the lawsuit." *Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for Plaintiffs. *Id.* (citations omitted).

Clifford Tucker, Esq., of Sacco & Fillas LLP has significant experience prosecuting, defending, and settling wage and hour actions and is well-versed in wage and hour law. Clifford Tucker, Esq., is a trial attorney licensed in New York and New Jersey. He practices employment law at the Law Office of Sacco & Fillas LLP. Mr. Tucker focuses on representing clients in matters related to minimum wage, overtime, spread-of-hours, the Wage Theft Protection Act, and retaliation under the federal Fair Labor Standards Act, New York Labor Law, and the implementing regulations of federal and state wage and hour laws. Additionally, he handles discrimination and harassment actions, has provided representation for civil servants in administrative proceedings, and defended employers at the New York Department of Labor and arbitrated contractor disputes. Mr. Tucker serves clients from various industries, including hospitality, construction, and civil service. His representation extends to the United States District Courts for the Southern and Eastern District of New York, the New York State Supreme Court, the New York State Division of Human Rights, the New York City Commission on Human Rights, the New York State Department of Labor, and administrative proceedings. Mr. Tucker

has taught Continuing Legal Education classes on case preparation, investigation, negotiation, and discovery. Mr. Tucker also taught the "Basic Wage & Hour Rules: Spotting Red Flags" Continuing Legal Education class at the Injured Workers Bar Association 2024 Winter CLE. Clifford Tucker, Esq., also wrote and published "Introduction to the Federal and New York State Wage and Hour Laws" at the IWBA. *See Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5 (S.D.N.Y. 2015) ($450 per hour for a senior law firm attorney in FLSA type cases); *Yuquilema v. Manhattan's Hero Corp.,* No. 13-CV-461 WHP JLC, 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, No. 13CV461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) ("fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases"); *Almond v. PJ Far Rockaway, Inc.,* No. 1:15-CV-06792-FB-JO, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) ("attorney's fees , like other goods and services, increase in cost with inflation").

Oscar Alvarado, Esq., was an associate at Sacco and Fillas LLP with four years of experience prosecuting and defending wage and hour actions and was well-versed in wage and hour law. Mr. Alvarado represented clients in matters related to minimum wage, overtime, the Wage Theft Protection Act, and retaliation under the federal Fair Labor Standards Act, New York Labor Law, and the implementing regulations of federal and state wage and hour laws. Additionally, he managed discrimination and harassment actions. Mr. Alvarado served clients from various industries, including hospitality, construction, and civil service. His representation extends to the United States District Courts for the Southern and Eastern District of New York, the New York State Supreme Court, the New York State Division of Human Rights, and the New York City Commission on Human Rights.

Geoffrey Kalender, Esq., was an associate at Sacco & Fillas LLP. He has represented workers in discrimination and wage violation cases, including class and collective actions involving misclassification, tip violations, and unpaid wages. He has tried claims to verdict and argued in the Second Circuit. He was named a Super Lawyers Rising Star in 2023 and 2024. *See* Employment Law GK, https://www.employmentlawgk.com/background (last visited Apr. 29, 2025).

## 7.  Conclusion

For the foregoing reasons, the parties respectfully request that the Court grant the motion for approval. The settlement in this case is fair and reasonable and should be approved by the Court.

Respectfully submitted,

By:  _____/s/ Clifford Tucker_____
                    Clifford Tucker, Esq.